**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Annabelle Begay, | No. 3:20-cv-8057-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, an administrative agency of the United States, | |
| Defendant. | |

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 11) and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Cross-Motion for Summary Judgment (Doc. 19). Plaintiff filed a Reply in support of her Motion and Response to ONHIR's Cross-Motion for Summary Judgment (Doc. 21), and Defendant filed a Reply in further support of its Cross-Motion for Summary Judgment (Doc. 22). Also before the Court is Plaintiff's Motion to Strike (Doc. 13). Defendant filed a Response and Objection to Plaintiff's Motion to Strike (Doc. 16), and Plaintiff filed a Reply in support of her Motion to Strike (Doc. 18).

**I.    Background**

This case arises from a denied claim for Navajo and Hopi Indian relocation benefits. Plaintiff Annabelle Begay ("Ms. Begay" or "Plaintiff") is an enrolled member of the Navajo Nation. (Doc. 1 at ¶ 5). She applied for relocation benefits on April 21, 2009. (*Id.* at ¶ 16). The Office of Navajo and Hopi Indian Relocation ("ONHIR" or "Defendant") denied Plaintiff's application on March 21, 2012, articulating its reason for the denial as:

"ONHIR records indicate that you and your father Roger Begay, Sr. moved off of the HPL in 1979" before Plaintiff had attained head of household status. (Doc. 9 at 90; Doc. 1 at ¶ 17). Plaintiff appealed ONHIR's denial of relocation benefits. (Doc. 1 at ¶ 19). The administrative hearing on Plaintiff's appeal occurred on November 8, 2013. (*Id.* at ¶ 20). Plaintiff and her father, Roger Begay, testified that they remained on Hopi Partitioned Lands ("HPL") until 1990, several years after Plaintiff attained head-of-household status in 1982. (Doc. 1 at ¶ 20; Doc. 9 at 119; Doc. 11 at 6–7). Plaintiff and ONHIR submitted Post-Hearing briefs to the Independent Hearing Officer ("IHO") on December 12, 2013. (Doc. 1 at ¶ 22). ONHIR submitted and cited to the following documents ("Disputed Documents") in its post-hearing brief: (1) the Roger Begay Affidavit; (2) transcript portions from Roger Begay's 1986 benefits hearing; and, (3) the Williams Affidavit. (Doc. 19 at 12–13).

The IHO upheld the denial of relocation benefits on January 10, 2014. (Doc. 1 at ¶ 25). The IHO determined that Plaintiff and Roger Begay were not credible witnesses because their testimonies contradicted Roger Begay's own 1986 affidavit which stated that Roger Begay's family, including Plaintiff, permanently moved to Tuba City in 1979. (Doc. 9 at 12, 119). The IHO stated that Plaintiff's testimony to the contrary had "no evidentiary value and [was] an unreliable artifact about the family's living situation from and after 1979." (Doc. 1 at ¶ 26; Doc. 9 at 123). Thus, the IHO concluded that Plaintiff moved off HPL prior to becoming head of household. (Doc. 1 at ¶ 25; Doc. 9 at 120–123). Therefore, because Plaintiff was not a resident on HPL when she became head of household, the IHO determined she was not eligible for relocation benefits. (Doc. 1 at ¶ 25).

Plaintiff is an enrolled member of the Navajo Nation. (Doc. 1 at ¶ 5). She was born on December 8, 1960 to parents who lived in Coalmine Mesa, or the Howell Mesa area of the Coalmine Chapter. (*Id.* at ¶ 7; Doc. 19 at 3). This area was later partitioned for the use of the Hopi Indian tribe. (Doc. 1 at ¶ 7; *Sekaquaptewa v. MacDonald,* 626 F.2d 113 (9th Cir. 1980). In Coalmine, Plaintiff lived with her family in a home made from railroad ties. (Doc. 1 at ¶ 7; Doc. 9 at 6, 18–19). Plaintiff attended school in Tuba City grades 1 through

12. (Doc. 1 at ¶ 10; Doc. 8 at ¶ 10). Plaintiff's father also constructed a residence in Tuba City for use during inclement weather when Plaintiff and her siblings could not commute home from school. (Doc. 1 at ¶ 7; Doc. 12 at ¶ 14). Tuba City is located on Navajo Partition Land ("NPL"). *Sekaquaptewa* 626 F.2d at 113. Plaintiff graduated from high school in May of 1980. (Doc. 1 at ¶ 12). Following her graduation, Plaintiff babysat for relatives in Tuba City. *Id.* There are no tax records or documents showing any earnings from Plaintiff's babysitting. (Doc. 9 at 118; Doc. 19 at 3). In 1982, Plaintiff began working for the Navajo Tribe's Water Resources Department in Tuba City. (Doc. 1 at ¶ 13; Doc. 12 at ¶ 19). Her social security earnings statement indicates she earned $3,008.00 in 1982 which is a sufficient income to support head of household status. (Doc. 1 at ¶ 13; Doc. 9 at 83, 90). Plaintiff was married in 1986. (Doc. 9 at 67). Plaintiff had her first child in 1991. *Id.*

Plaintiff's father, Roger Begay, applied for ONHIR relocation benefits and ONHIR initially denied his benefits application. (Doc. 1 at ¶ 8). In Roger Begay's 1986 appeal, he testified that he and his family permanently moved from Coalmine Chapter to Tuba City in 1979 after getting rid of his livestock in Coalmine. (Doc. 9 at 30). Affidavits from Nelson and Sally Williams supported Roger Begay's testimony. (*Id.* at 9). The IHO reversed ONHIR's denial of Roger Begay's benefits in August 1986. (Doc. 1 at ¶ 8). Roger Begay received his relocation home in 1990. (*Id.* at ¶ 7; Doc. 9 at 166).

Plaintiff's younger sister, Annette Begay, applied for relocation benefits and ONHIR initially denied her relocation benefits application. (Doc. 1 at ¶ 9). Annette appealed this decision. *Id.* In the 1988 appeal, Annette and Roger Begay testified that they continued to live in Coalmine after 1979 and currently resided there at the time of this appeal. (Doc. 9 at 141, 145; Doc. 11 at 16). In 1994, ONHIR granted her benefits application thus certifying that she remained on HPL lands until she attained head of household status. (Doc. 1 at ¶ 31; Doc. 9 at 136, 138, 150–151).

Plaintiff alleges that her family did not move from Coalmine to Tuba City in 1979, but rather argues she remained on HPL until 1990. (Doc. 1 at ¶ 16). Plaintiff's father, Roger Begay, also testified in Plaintiff's appeal that their family continued living in Coalmine

and kept livestock there until he received a relocation home in 1990, contradicting the affidavit in his 1986 appeal. (Doc. 9 at 119; Doc. 12 at 7, 9; Doc. 19 at 4). In support of her claim that her family remained in Coalmine, Plaintiff alleges that: (1) she rode the school bus home to Coalmine until she graduated high school in 1980 (Doc. 1 at ¶¶ 10–12); (2) she returned home to Coalmine on weekends when she babysat in Tuba City from 1980–1981 (*Id.* at ¶ 12); and (3) she resided in Coalmine and commuted to and from Tuba City when she worked for the Navajo Tribe Water Department in 1982 (*Id.* at ¶¶ 13–14).

Also before the Court is Plaintiff's Motion to Strike (Doc. 13) material ONHIR cited to in its post-hearing brief. It is disputed as to whether those documents are extra-record evidence or whether the record was held open for additional supporting materials. At the conclusion of Plaintiff's appeal, the IHO held the record open for 14 days for Post-Hearing Memoranda. (Doc. 12 at ¶ 29; Doc. 20 at ¶ 29). Plaintiff alleges that the IHO did not continue to hold the record open after that time, thus the materials ONHIR submitted were extra-record. (Doc. 11 at 7–8). ONHIR retorts that the IHO did not explicitly close the record, rather both parties were given an extension to submit post-hearing briefs, which both parties did by December 13, 2013; thus the matter was "held open" and the evidence was properly admitted. (Doc. 19 at 5; Doc. 20 at ¶ 30). Plaintiff alleges that because this new evidence was disclosed after the 14-day time frame, without Defendant's request for the IHO to keep the record open and without these documents being disclosed to Plaintiff's counsel, they were not made an official part of the record and could not be used by the IHO. (Doc. 11 at 8–10; Doc. 13 at 6; Doc. 18 at 5). ONHIR contends that Plaintiff's counsel was aware of the documents. (Doc. 16 at 6–7; Doc. 19 at 14). Plaintiff also had the opportunity to respond to this evidence post-trial when she submitted a Motion for Reconsideration including several documents supporting her assertion that she remained on HPL "beyond 1979." (Doc. 1 at ¶ 28). The Court will consider these matters in turn.

**II.     Discussion**

As an initial matter, the Court finds Plaintiff has not established grounds to strike portions of the administrative record. Plaintiff invokes Federal Rule of Civil Procedure

12(f) to strike documents from the administrative record, however, rule 12(f) only permits a court "to strike from a pleading." Fed. R. Civ. P. 12(f). Furthermore, it is clear that documents Plaintiff now seeks to strike were before ONHIR, and Plaintiff was aware of their existence. Therefore, the motion to strike will be denied.

Plaintiff brings a Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c). (Doc. 11 at 1). She argues the Court should grant her Motion because the IHO's reliance on the Disputed Documents was arbitrary, capricious, and an abuse of discretion for the following reasons: (1) ONHIR submitted the Disputed Documents after the record was closed; (2) Plaintiff was deprived of an opportunity to explain inconsistencies between the Disputed Documents and testimony given at her hearing; and (3) collateral estoppel precluded ONHIR from litigating the issue of when Plaintiff moved off the HPL because ONHIR granted Annette relocation benefits.

Defendant brings a Cross-Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1. (Doc. 19 at 1). ONHIR argues that the IHO's reliance on the Disputed Documents was not arbitrary, capricious, and prejudicial because (1) the Disputed Documents were submitted in a Post-Hearing brief within the submission deadline, making it a proper part of the Administrative Record the IHO could rely on; (2) Plaintiff was able to respond to the evidence in a Reconsideration Motion and there is no regulation that Plaintiff should have been allowed to respond at her hearing; and (3) because nonmutual collateral estoppel cannot be applied against the government, ONHIR is not estopped from determining Plaintiff's residency status.

**A.    Legal Standards**

  **a.  Summary Judgment**

Summary judgment is generally appropriate when the evidence, viewed "in the light most favorable to the non-moving party," shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987); Fed. R. Civ. P. 56(a). When the court reviews an agency action however, "there are no disputed facts that the district court must

resolve" because the "administrative agency…is itself the finder of fact." *Occidental Eng'g Co. v. Immigration & Naturalization Serv.*, 753 F.2d 766, 769–770 (9th Cir. 1985). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 769. The court thus utilizes summary judgment as "the appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.* at 770.

### b. Judicial Review of Agency Decisions

The Administrative Procedure Act ("APA") governs court review of agency actions. 5 U.S.C. § 706(2)(A); *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995) ("Unless Congress specifies otherwise, we review agency action under the Administrative Procedure Act.") In accordance with the APA, "the reviewing court can reverse only if the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo-Hopi Indian Relocation Commission*, 878 F.2d 1119, 1122 (9th Cir. 1989); *see* 5 U.S.C. § 706(2)(A); (2)(E). "In applying that standard, the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). An agency action is only arbitrary and capricious if the agency:

> Has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Substantial evidence must support agency decisions; this is satisfied by "more than a scintilla but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). Enough "relevant evidence" must be present that "a reasonable mind might accept as adequate to support a conclusion." *Information Providers' Coalition for Defense of the First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991). If the IHO fails to justify the

decision, the Court can overturn the agency decision for an abuse of discretion. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 48 (an agency "must cogently explain why it has exercised its discretion in a given manner"). Still, the Court generally "sustain[s] an agency action if the agency has articulated a rational connection between facts found and conclusions made." *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1090 (9th Cir. 2005). The Court extends this deference because only the IHO "observe[s] [a witness's] tone and demeanor" and can "explore inconsistencies" or "decide whether [a witness'] testimony has…the ring of truth." *Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir. 1985).

**c. Relocation Benefits under the Navajo and Hopi Land Settlement Act**

An individual qualifies for Relocation Benefits if: (1) they are a member of a tribe residing on land not partitioned to their tribe, 25 C.F.R. § 700.147(a); and (2) the individual became a "head of household" while residing on land partitioned to the other tribe. *Id.* §§ 700.147(e), 700.69(a)(2), 700.69(c). Individuals cannot "receive separate benefits if it is determined that they are members of a household which has received benefits." 25 CFR § 700.147(d).

**i. Residency**

ONHIR regulations provide that "residence is established by proving that the head of household and/or his/her immediate family were legal residents…on the lands partitioned to the Tribe of which they are not members." 25 C.F.R. § 700.97. ONHIR clarified in the preamble to the regulation that "The term 'residence' in the final rule is meant to be given its legal meaning…which requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22, 227 (May 29, 1984). Further, ONHIR stipulated an inexhaustive list of various factors that would be examined "by the Commission in assessing an applicants' manifestations of intent to maintain legal residence in the partitioned lands" including: "ownership of livestock, Ownership of improvements, Grazing Permits, Livestock sales receipts, Homesite leases, Public health records, Medical and Hospital records, including those of Medicinemen,

1 Trading Post records, School records, Military records, Employment records, Mailing
2 Address records, Banking records, Driver's license records, Voting records-tribal and
3 county, Home ownership or rental off the disputed area, BIA Census Data, Information
4 obtained by Certification Field Investigation, Social Security Administration records,
5 Marital records, Court records, Records of Birth, Joint Use Area Roster, any other relevant
6 data." *Id.* at 278.

### ii. Head of Household

ONHIR regulations define a household as: "[a] single person who at the time his/her residence on land partitioned to the Tribe of which he/she is not a member actually maintained and supported him/herself or was legally married and is now legally divorced." 25 C.F.R. § 700.69(a)(2). "Head of household" is further defined as "that individual who speaks on behalf of the members of the household and who is designated by the household members to act as such." *Id.* at (b). Individuals thus attain "Head of Household" status when they (i) marry, (ii) have a child, or (iii) earn sufficient income to "actually maintain and support" themselves. *Id.* at (a)(1) and (a)(2). An amount of $1,300 or more is a sufficient income to achieve self-supporting status. *O'Daniel v. Office of Navajo Hopi Indian Relocation*, No. 07–354–PCT–MHM, 2008 WL 4277899, at *5 (D. Ariz. Sept. 18, 2008) ("ONHIR policy requires that the applicant establish that he or she earned $1,300.00 per year in income"); (Doc. 9 at 90).

### B. Analysis

The question before the Court is whether the IHO's use of ONHIR's post-evidentiary hearing documents in determining that Plaintiff was not a resident on HPL when she became head of household was arbitrary, capricious, and unsupported by substantial evidence, such that this Court should grant summary judgment in Plaintiff's favor. Plaintiff argues that IHO's reliance on the Disputed Documents was arbitrary, capricious, and an abuse of discretion for three reasons: (1) ONHIR submitted the Disputed Documents after the record was closed; (2) Plaintiff was deprived of an opportunity to explain inconsistencies between the Disputed Documents and testimony given at her

hearing; and (3) collateral estoppel precluded ONHIR from litigating the issue of when Plaintiff moved off the HPL because ONHIR granted Annette Begay relocation benefits. The Court will address these arguments in turn.

First, the Court finds that the IHO did not close the record prior to ONHIR's submission of the Disputed Documents. Under 25 C.F.R. § 700.313, the IHO is permitted to "[r]eceive relevant evidence." 25 C.F.R. § 700.313. Although the statute indicates the IHO can "[h]old the record open for submission of evidence no longer than fourteen days after completion of the hearings," the IHO can extend this deadline "for good cause shown." *Id.* It is apparent that both Plaintiff and Defendant submitted post-hearing briefs on December 12, 2013, well after the fourteen-day time window at the conclusion of Plaintiff's hearing, indicating the IHO gave an extension. (Doc. 1 at ¶ 22). Additionally, had the IHO closed the record, he would not have accepted either of these briefs, or considered the Disputed Documents. When ONHIR cited and submitted these documents in its post-hearing brief, the documents thus became part of the "exclusive record" which includes "all papers and requests filed in the proceeding." 5 U.S.C. § 556(e). As part of the record, the IHO could thus make determinations based upon this substantial evidence. And, Plaintiff's own brief was filed with the IHO on the same day. (Doc. 1 at ¶ 22). Therefore, the Court does not find the IHO's use of this material to be arbitrary, capricious, or an abuse of discretion.

Second, the Court finds that Plaintiff was not deprived of an opportunity to explain inconsistencies between the Disputed Documents and testimony given at Plaintiff's hearing. Plaintiff's counsel was aware of and had access to the Disputed Documents prior to the hearing. (Doc. 21 at 10). Additionally, following the post-briefing submissions, Plaintiff submitted a Motion for Reconsideration including several documents supporting her assertion that she remained on HPL "beyond 1979." (Doc. 1 at ¶ 28). Furthermore, Plaintiff's assertion that ONHIR's evidence must have been presented pre-hearing is belied by the fact that ONHIR policy allows for the IHO to hold the record open for the submission of evidence post-hearing. C.F.R. §700.313. Because Plaintiff did respond to

the additional evidence by submitting a Motion for Reconsideration, she thus was not deprived of the opportunity to respond to ONHIR's evidence.

Third, the Court does not find that Annette Begay's receival of relocation benefits in any way determines that Plaintiff is entitled to relocation benefits. Plaintiff cannot use the doctrine of nonmutual collateral estoppel (issue preclusion) against the government. *United States v. Mendoza*, 464 U.S. 154 (1984) ("The United States may not be collaterally estopped on an issue such as the one involved here, adjudicated against it in an earlier lawsuit brought by a different party"). Plaintiff cannot use ONHIR's determination of her sister's residency, to estop ONHIR from making her residency determination. ONHIR's "obligation is only that the agency applies the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence." *Daw v. Office of Navajo & Hopi Indian Relocation*, No. CV-19-08212-PCT-SMB, 2020 WL 5632121, at *4 (D. Ariz. Sep. 18, 2020) (*citing Teamsters Local Union 769 v. NLRB*, 532 F.2d 1385, 1392 (D.C. Cir. 1976)). After hearing witness testimony and reviewing all evidence on record, the IHO determined Plaintiff moved off HPL in 1979. His relocation benefits determination in Annette Begay's case, after considering other testimony and evidence, does not make his determination here improper. Moreover, the IHO here was presented with additional and conflicting evidence which ultimately supports his conclusions.

Therefore, the Court finds that the ONHIR did not abuse its discretion, or arbitrarily, or capriciously deny Plaintiff relocation benefits. Here, the IHO determined Plaintiff's residency status after evaluating witness testimony on record. The IHO explained that he found Roger Begay's and Plaintiff's appeal testimony to be inconsistent with Roger Begay's prior statements at his hearing and in his affidavit. (Doc. 9 at 122). There were enough contradictory facts for the IHO to rationally conclude that statements made by Plaintiff and Roger Begay during Plaintiff's appeal were not credible. Those contrary records indicated that Plaintiff moved from Coalmine to Tuba City in 1979, three years before becoming self-supporting head of household. *Id.* Therefore, the IHO had sufficient

record evidence, and a nonarbitrary reason to find Plaintiff and Roger Begay's testimony uncredible as it related to whether Plaintiff was a resident of HPL lands when she attained head of household status. Therefore, the Court must give deference to the IHO's credibility determinations. *Sarvia-Quintanilla*, 767 F.2d at 1395. Because the role of this Court is only to determine whether the evidence on record permitted the IHO to make his decision, it finds that the evidence was sufficient to support the IHO's determination that Plaintiff was not a resident on HPL when she became a head of household. *Occidental Eng'g Co.*, 753 F.2d at 769.

### III. Conclusion

The Court finds that IHO's use of ONHIR's post-evidentiary hearing documents to determine that Plaintiff was not residing on HPL at the time she attained head of household status was not arbitrary, capricious, or an abuse of discretion. Substantial evidence on the record supported the IHO's determination as to Plaintiff's status. Therefore, the Court will **deny** Plaintiffs' Motion for Summary Judgment and **grant** Defendants' Cross-Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 11) is **denied** and Defendant's Cross-Motion for Summary Judgment (Doc. 19) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Doc. 13) is **denied**.

**IT IS FINALLY ORDERED** that judgment shall be entered for Defendant and this matter shall be closed.

Dated this 7th day of July, 2021.

Honorable Diane J. Humetewa
United States District Judge